**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL CASE NO. 24-23-DLB-CJS**

**MGPI of INDIANA, LLC**                                                     **PLAINTIFF**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**CITY OF WILLIAMSTOWN, KY, et al.**                          **DEFENDANTS**


\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

This matter is before the Court on Defendants' Motions to Dismiss and Supplemental Motions to Dismiss.  (Docs. # 45, 46, 53 and 54).  Plaintiff having filed its Responses (Docs. # 47 and 57), and Defendants having filed their Replies (Docs. # 50, 51, 58, and 59), these Motions are now ripe for review.  For the following reasons, Defendants' Motions are **granted in part and denied in part**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff MGPI of Indiana, LLC ("MGPI") is a producer of distilled spirits, branded spirits products, and specialty food ingredients.  (Doc. # 44 ¶ 13).  MGPI has five existing distilled spirits warehouse facilities in Williamstown, Kentucky.  (*Id*.).  This case concerns MGPI's negotiations with the City of Williamstown to build up to six additional warehouse facilities to be used in the storage and aging of bourbon.  (*Id.* ¶ 14).  Given the voluminous facts in this case, the Court will recount only those necessary to the adjudication of the instant Motions.

On August 1, 2023, MGPI and the City of Williamstown (the "City") began negotiations regarding MGPI's expansion in the city (the "Project").  (*Id.*).  Prior to these negotiations, the approximately 120 acres that were to be allocated for the Project (the "Project Site") had been rezoned to Industrial-One ("I-1") pursuant to Ordinance 2021-14 passed on November 19, 2021.  (*Id.* ¶ 15).  On September 29, 2019, prior to being elected Mayor of Williamstown, Mark Christopher objected to this rezoning.  (*Id.* ¶ 16).  The City of Williamstown proceeded with the rezoning anyway.  (*Id.*).

On September 19, 2023, MGPI met with now Mayor Christopher and the City Council to discuss the Project and its financing.  (*Id.* ¶ 17).  A portion of the costs of the Project were to be financed by proceeds from industrial revenue bonds (the "Bonds") issued by Williamstown.  (*Id.*).   Three days later, on September 22, 2023, Mayor Christopher sent MGPI a letter stating that City Council had accepted and agreed to the construction of a water tower, a waterline extension, and issuance of the Bonds.   (*Id.*) (Ex. C).  Mayor Christopher represented to MGPI that the City of Williamstown had "made a commitment to partner with MPG Ingredients, Inc. [sic], pertaining to [its] proposal, [its] donation, and further expansion of Conrad Lane."  (*Id.*).  On October 2, 2023, the City Council conducted its first reading for Ordinance 2023-14, which would authorize issuance of the Bonds, along with approval and authorization of the execution and delivery of:

> (A) a Lease Agreement between the City of Williamstown, as Lessor, and MGPI, as Lessee, for the Project, with the rental payments to be made by MGPI thereunder pledged to repay the Bonds, (B) a Bond Purchase Agreement providing for the issuance, sale, and delivery of the Bonds to finance the costs of the Project and providing for their negotiated sale, (C) a Water Services Support Agreement relating to municipal water service to the Project, and (D) other related Documents; and other related actions.

(*Id.* at ¶ 19).

On October 17, 2023, the City Council conducted a second reading and voted to approve Ordinance 2023-14, along with the lease agreement, bond purchase agreement, and water services support agreement.   (*Id.* ¶¶ 21-22).   On the same date, Mayor Christopher signed the Ordinance and executed the Water Services Support Agreement. (*Id.* ¶ 24).  The Water Services Support Agreement stated the City had "adopted a Bond-authorizing Ordinance" and included promises by the City to issue the bonds "for the benefit of the Company [MGPI], . . . to finance the acquisition, construction and installation of the Project, to acquire title to the Project and to lease said Project back to the Company."  (*Id.* ¶ 26) (quoting Ex. E).

MGPI alleges that "[a]cting in reliance on the Defendants' promises that became legally binding through the City Council's passing of Ordinance 2023-14 and through the Water Services Support Agreement, MGPI entered into a purchase agreement for the Property to purchase the Property for $2,800,000."  (*Id.* ¶ 30).  MGPI alleges closing has been delayed due to the alleged actions of the Defendants.  (*Id.*).  MGPI also alleges it incurred other substantial costs associated with the Project in reliance of Defendants' promises that "became legally binding through the City Council's passing of Ordinance 2023-14 and through the Water Services Support Agreement."  (*Id.* ¶ 31).  On October 23, 2023, in accordance with these agreements, the Planning Commission approved a grading plan for two of MGPI's buildings on the Project Site.  (*Id.* ¶ 32).

Then, allegedly for the first time, "Mayor Christopher read a prepared letter into the record at the November 6, 2023 Williamstown City Council Meeting indicating that he wanted the City Council to reconsider its decision to approve and support the MGPI

Project." (*Id.* ¶ 33).  The next day, Mayor Christopher sent MGPI a letter stating he would be "issuing a stop work order on the proposed project area" effective November 10, 2023. (*Id.* ¶ 34).  On November 9, 2023, Mayor Christopher executed the Stop Work Order.  (*Id.* ¶ 35).  On November 30, 2023, MGPI executed the Lease Agreement, Bond Purchase Agreement, and Request for Advance of Bond Proceeds and Construction Fund Requisition called for in Ordinance 2023-14.  (*Id.* ¶¶ 36-37).  MGPI alleges that "to date, Mayor Christopher has refused to execute [these documents] as 'authorized, empowered, and directed' by Ordinance 2023-14." (*Id.*).

On December 4, 2023, the City Council held a meeting in which Mayor Christopher opened the floor to public comment regarding the Project.  (*Id.* ¶ 38).  At that meeting, City Attorney Jeff Shipp gave the first reading of Ordinance 2023-15, which purported to repeal Ordinance 2023-14. (*Id.*).  On December 19, 2023, the City Council held a Special Meeting, at which MGPI could directly answer questions regarding the Project.  (*Id.* ¶ 39). Mayor Christopher then directed City Attorney Shipp to provide a second reading of Ordinance 2023-15.  (*Id.*).  Shipp allegedly refused and "stated on the record that he considered Ordinance 2023-15 to violate state and federal law."   (*Id.*).  Then, although "Shipp informed Mayor Christopher that the procedural rules of the City Council allow either the Clerk or the Mayor to conduct the second reading" Mayor Christopher allegedly told Shipp "to read the Ordinance or leave the meeting." (*Id.*).  Shipp left the meeting and Mayor Christopher allegedly adjourned the meeting due to a lack of legal counsel being present. (*Id.*).  Thereafter, Mayor Christopher wrote a letter to the Planning Commission and the Grant County Building Inspector requesting the relevant permitting be postponed until it obtained new legal counsel.  (*Id.* ¶ 42).

4

Once new legal counsel was hired, the City Council conducted a second reading of Ordinance 2023-15.  The Ordinance was adopted, with Mayor Christopher casting the tie breaking vote.  (*Id.* ¶ 47).  On January 19, 2024, Mayor Christopher sent a letter to the Planning Commission requesting that it table the review of all permits related to the Project.  (*Id.* ¶ 48).  On January 22, 2024, the Planning Commission voted to table the review of permits or plans of the Project in accordance with the letter.  (*Id.* ¶ 49).

On February 12, 2024, MGPI filed the instant action in this Court alleging violations of 42 U.S.C. § 1983, breach of contract, promissory estoppel, breach of the covenant of good faith and fair dealing, improper moratorium, regulatory taking and requesting, *inter alia,* a declaration of rights, injunctive relief, and punitive damages.  (Doc. # 1). Defendants Williamstown City Council and its members, Kim Crupper, Greg Middleton, Robert Perry, Gina Austin Smith, Jayson Payne, and John Coleman (collectively the "City Council"), in their official capacity, and Mayor Christopher, in his official capacity, moved to dismiss the claims against them, arguing that these claims are redundant, and these Defendants have absolute legislative immunity as to these claims.  (Doc. # 36).[1]  Mayor Christopher also moved to dismiss the claims against him in his individual capacity.  (Doc. # 37).

MGPI filed its Response and Motion for Leave to File its First Amended Complaint. (Docs. # 38 and 39).  Magistrate Judge Candace J. Smith granted this Motion as a matter of right and instructed the Clerk to re-docket the two Motions to Dismiss and Plaintiff's Response because entry of the Amended Complaint only mooted a portion of the

---

[1]      Plaintiff notes that not all Defendants have joined the Motions to Dismiss, referring only to the "Moving Defendants."   (*See* Doc. # 47 at n.2).  To the extent the Court refers to "Defendants" in this Order, the Court is specifically referring to the moving Defendants.

Motions.  (Doc. # 43) (Motions to Dismiss re-docketed as Docs. # 45 and 46).  Defendant

Mark Christopher, in his individual capacity, then filed a Reply in support of his Motion to

Dismiss and a Supplemental Motion to Dismiss MGPI's added claim of tortious

interference with a contractual relationship.  (Docs. # 50 and 53).  All other Defendants

similarly filed a Reply in support of their Motion to Dismiss, and a Supplemental Joint

Motion to Dismiss the claims of breach of good faith and fair dealing, regulatory taking,

and injunctive relief against the City of Williamstown.  (Docs. # 51 and 54).  Plaintiff filed

a Combined Response to the Supplemental Motions (Doc. # 57) and Defendants filed

their Replies (Docs. # 58 and 59).

## II.      ANALYSIS

### A.      Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiff's pleading

must meet the plausibility standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  In order to have "facial plausibility," the plaintiff must "plead[] factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

U.S. at 556).  This requires that the plaintiff plead sufficient factual matter to show it is

entitled to relief under a viable legal theory.  *See Left Fork Min. Co. v. Hooker*, 775 F.3d

768, 773 (6th Cir. 2014).  "If a reasonable court can draw the necessary inference from

the factual material stated in the complaint, the plausibility standard has been satisfied."

*Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012).  This Court accepts as true all

factual allegations made by the Plaintiff in its Complaint and construes them in the light

most favorable to Plaintiff as the non-moving party. *See Left Fork Min. Co.,* 775 F.3d at 773.

B.      Discussion

Defendants seek dismissal of the claims against the City Council and Mayor Christopher in their official capacity, the claims against Mayor Christopher in his individual capacity, and the claims of breach of good faith and fair dealing, regulatory taking, and injunctive relief against the City.  The Court will consider each set of claims in turn.

### 1.      *Official capacity claims against the City Council and Mayor Christopher*

Defendants Williamstown City Council and its members, Kim Crupper, Greg Middleton, Robert Perry, Gina Austin Smith, Jayson Payne, and John Coleman, (collectively "Williamstown City Council"), in their official capacity, and Mayor Christopher in his official capacity, move to dismiss all claims against them.  (Doc. # 45-1). Defendants argue these claims should be dismissed because they are redundant of the claims against the City and that Defendants are entitled to absolute legislative immunity. (*Id.*).

First, Defendants Williamstown City Council Members and Mayor Christopher argue the claims against them in their official capacity should be dismissed on redundancy grounds because the claims are also brought against the City of Williamstown. (Doc. # 45-1 at 3-4).  Plaintiff responds that the City Council members and Mayor Christopher are necessary parties and therefore must be named individually. (Doc. # 47 at 13).  Courts generally "dismiss official-capacity claims against officials when the governmental entity they represent is also a defendant for the same claims." *Schirmer v. Powell Cnty. Det. Ctr.*, 685 F. Supp. 3d 459, 463 (E.D. Ky. 2023) (citation omitted).

This is because "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)).

Plaintiff relies on an application of Kentucky state law to support its argument that the City Council members and Mayor Christopher are necessary parties and therefore the claims against them in their official capacities are proper.  (*See* Doc. # 47 at 13-17). However, Plaintiff has asserted a § 1983 claim, which is a federal claim.  Plaintiff's claim that these official capacity suits are necessary to protect any claims to injunctive relief is also unavailing because "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Graham*, 473 U.S. at 167, n.14 (citations omitted).

Here, the claims asserted against the City Council members and Mayor Christopher in their official capacities are not distinct from the claims asserted against the City of Williamstown.  Therefore, the motion to dismiss these claims is **granted**.  Because these claims are properly dismissed on redundancy grounds, the Court need not address Defendant's alternative argument that Defendants are entitled to absolute legislative immunity as to the claims against them in their official capacities.

Defendants argue MGPI cannot seek punitive damages against the City of Williamstown because the Supreme Court has held that punitive damages are not available against municipalities in § 1983 actions.  (Doc. # 45-1 at 6) (citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).   Subsequently, MGPI eliminated this

claim from its First Amended Complaint.  (Doc. # 47 at 20).  The claim for punitive damages against the City of Williamstown is therefore **denied as moot**.  However, MGPI maintains that the claim for punitive damages against Mayor Christopher in his individual capacity survives dismissal under Rule 12(b)(6).  (*Id.*)  This argument will be addressed in the section below.

### 2.    *Individual capacity claims against Mayor Christopher*

Mayor Christopher further moves to dismiss all claims against him in his individual capacity.  (Doc. # 46).  In his original Motion to Dismiss, Mayor Christopher moved to dismiss Counts I through VIII.  (*Id.*).  In its Response, MGPI notes that the Amended Complaint eliminates and therefore moots the arguments regarding Counts II through VI in the original Complaint.  (Doc. # 47 at 20).  Therefore, MGPI retains only Count I (§ 1983 claim), Count VII (declaration of rights), and Count VIII (injunctive relief) against Mayor Christopher in his individual capacity from the original complaint.  In the Amended Complaint, MGPI also added a claim of tortious interference with a contractual relationship against Mayor Christopher in his individual capacity (Count V).  (Doc. # 44).

Mayor Christopher argues Counts I, VII, and VIII against him in individual capacity should be dismissed because he is entitled to absolute legislative immunity as to these claims.  (Doc. # 53 at 3).  Mayor Christopher further argues Count V, the claim of tortious interference with a contractual relationship, should be dismissed because as an agent of the City of Williamstown, he cannot be liable for interfering with a contract to which the City was a party.  (Doc. # 53 at 11).  Finally, Mayor Christopher argues that because the claim of tortious interference with a contractual relationship claim fails, Plaintiff cannot

state a claim for punitive damages against Mayor Christopher in his individual capacity. (*Id.* at 12).

### i.    Legislative immunity

Mayor Christopher argues Counts I, VII, and VIII should be dismissed because he is entitled to absolute legislative immunity from civil liability for legislative activities.  (Doc. # 46-1 at 6).  It is true that "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)); *see also Anders v. Cuevas*, 984 F.3d 1166, 1181 (6th Cir. 2021).  And "[l]ocal legislators are absolutely immune from liability when they act in their legislative capacities."  *Guindon v. Twp. of Dundee, Mich.*, 488 F. App'x 27, 33 (6th Cir. 2012).  However, Plaintiff responds that Mayor Christopher is not entitled to absolute immunity here because the acts he took were not within the "scope of immunity."  (Doc. # 47 at 18) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1277-78 (6th Cir. 1988)).

The actions Plaintiff specifically points to in support of the Counts against Mayor Christopher's in his individual capacity are:

> (1) refusing to sign the Lease Agreement and Bond Purchase Agreement, both of which were required under Ordinance 2023-14; (2) issuing a "Stop Work Order" that had no basis in law; (3) replacing City Attorney Shipp for his refusal to perform a second reading of Ordinance 2023-15 based upon Shipp's belief that the ordinance violated the rights of MGPI; and (4) instructing the Planning Commission and Grant County Building Inspector to cease any review of MGPI's site plan without any authority to do so.

(Doc. # 47 at 19) (citing Doc. # 1 ¶ 9-10).   Plaintiff argues that these are "at best, administrative actions" and "[a]t worst . . . actions Mayor Christopher took to interfere in the Project thanks to the access and perceived authority of his office but which he had no

10

legal right to undertake." (*Id.*).  Mayor Christopher responds that some of these actions were not included in the Complaint or occurred on dates not included within the parameters of Count I.  (Doc. # 53 at 5-6).  Then, considering the actions properly alleged within the dates in Count I, Mayor Christopher argues these actions are entitled to absolute immunity.  (Doc. # 53 at 7).

As an initial matter, the Court rejects the argument that it may not consider certain actions because they were not specifically alleged under Count I.  When considering whether claims have been sufficiently alleged, the Court "considers the complaint in its entirety." *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 383 (6th Cir. 2016) (cleaned up).  And in response to the argument that "nowhere in MGPI's Complaint does it assert that Mayor Christopher replaced Attorney Shipp or that he did so based on Attorney Shipp's actions at the December 19, 2023 meeting," (Doc. # 53 at 5), the Court notes that Plaintiff alleges (1) Attorney Shipp was asked to leave if he did not read the Ordinance at the December 19, 2023 meeting, and (2) Mayor Christopher wrote a letter to the Planning Commission after this meeting requesting new Legal Counsel.  (*See* Doc. # 44 ¶¶ 39, 42).  Considering these facts in the light most favorable to the Plaintiff and drawing all inferences in its favor, the Court concludes these allegations regarding Attorney Shipp were in fact pled in the Amended Complaint.  *See Ohio Pub. Emps. Ret. Sys.*, 830 F.3d at 382.

The relevant inquiry for the Court now is whether the listed actions are legislative. Even though Mayor Christopher is in an executive office, *see* KRS § 83A.130(3), he may be entitled to legislative immunity if he was performing legislative functions.  *See Bogan*, 523 U.S. at 55.  There are two factors relevant to determine whether acts fall within the

scope of legislative immunity.  *Anders*, 984 F.3d at 1181 (citing *Bogan*, 523 U.S. at 54).

Those factors are (1) "whether a defendant's actions were legislative in form., i.e., whether

'they were integral steps in the legislative process'" and (2) "whether a defendant's actions

were 'legislative in substance,' i.e., whether the actions 'bore all the hallmarks of

traditional legislation,' including whether they 'reflected . . . discretionary, policymaking

decision[s] implicating the budgetary priorities' of the government and the services the

government provides to its constituents."  *Id.* at 1181-82 (quoting *Bogan*, 523 U.S. at 55-

56).  The burden is on Mayor Christopher to prove that he is protected by legislative

immunity.  *See Pratt Land & Dev., LLC v. City of Chattanooga*, No. 1:19-CV-010, 2020

WL 5240750, at *3 (E.D. Tenn. Sept. 2, 2020) (citing *Guindon*, 488 F. App'x at 33).

While the passage of a zoning ordinance is a legislative act and therefore subject

to absolute immunity, other acts related to zoning may be administrative in nature.  *See*

*Jaggers v. City of Alexandria*, No. 08-5213, 2009 WL 233244, at *5 (6th Cir. Feb. 2, 2009)

(citing 8A Eugene McQuillian, The Law of Municipal Corporations § 25.217 (3d ed. 2008))

("[A] zoning ordinance vesting in the municipal council the power to determine whether a

building permit should be granted . . . ordinarily is regarded as administrative, rather than

legislative in character.").  For example, in *Guindon v. Township of Dundee, Mich.*, the

Sixth Circuit clarified that actions such as denial of a building permit request is

administrative.  *See* 488 F. App'x 27, 34 (6th Cir. 2012).

Here, it is not clear from the current record that the actions taken by Mayor

Christopher were "integral steps of the legislative process."  *Bogan*, 523 U.S. at 55.

Mayor Christopher's acts, and omissions, were actions he would have taken pursuant to

the Ordinance that had already been passed.  Mayor Christopher argues that "[c]learly,

his acts of introducing and voting on Ordinance 2023-15 were legislative acts." (Doc. # 53 at 7). However, these are not the acts that Plaintiff allege were outside the scope of legislative immunity. Arguing that the "remaining acts" all "led to the culminating act of passing Ordinance 2023-15" and are therefore legislative acts also does not cure the issue. (*See* Doc. # 53 at 7). Refusal to sign or enforce agreements entered pursuant to a previous Ordinance is not an act in furtherance of passing a new one.

Additionally, viewing the facts in the light most favorable to the plaintiff, these decisions were not "discretionary, policymaking decision[s]". *Bogan*, 523 U.S. at 55. The signing of these agreements was more like "mandatory decisions" pursuant to the existing agreements, which makes it more likely that the actions are administrative, and not legislative. *See Pratt Land & Dev., LLC*, 2020 WL 5240750, at *4 (citing *Bogan*, 523 U.S. at 51) (distinguishing between ministerial and legislative acts). Entry of the agreements themselves was the discretionary, policy making decision, but those acts are not at issue here. Regardless, dismissal at this stage is improper if there is still a question of fact as to whether the relevant decisions resulted from "larger policy concerns or goals." *Jaggers*, 2009 WL 233244, at *6. In *Jaggers*, the Sixth Circuit in an unpublished opinion affirmed the denial of a motion to dismiss similar claims where the alleged acts, "construed in a light favorable to the plaintiffs, seem[ed] to center on the suitability of the [plaintiff's] property for its proposed use," rather than on larger policy concerns or goals. *Id*.

Similarly here, there is no evidence presented by Mayor Christopher at this stage of the case that his acts of refusing to sign the lease agreement and bond purchase agreement, issuing the Stop Work Order, and instructing the Planning Commission and

Grant County Building Inspector to cease any review of MGPI's site plan reflect larger policy concerns or goals.  Instead, these acts may indicate a refusal to apply related rules to an existing property.  *See Jaggers*, 2009 WL 233244, at *5 ("If . . . the zoning action involves applying existing zoning rules to a specific property, the question of legislative immunity becomes more difficult because applying known rules and legislation to make a zoning decision in this way is more likely to be administrative rather than legislative.").  As to Mayor Christopher's decision to remove Attorney Shipp from the meeting and later seek his replacement, the Sixth Circuit has stated that disciplinary actions such as this may be administrative in nature.  *Guindon*, 488 F. App'x at 35 (citing *Kamplain v. Curry Cnty. Bd. of Comm'rs*, 159 F.3d 1248, 1252 (10th Cir.1998); *Hansen v. Bennett*, 948 F.2d 397, 402-03 (7th Cir.1991)).

The actions at issue here are not "quintessentially legislative," such as the act of passing a zoning ordinance might be.  *See Jaggers*, 2009 WL 233244, at *5.  At the Rule 12 stage of the proceedings, Mayor Christopher has not met his burden to show that he is entitled to absolute legislative immunity for these actions.  Therefore, the Motion to Dismiss these claims against Mayor Christopher in his individual capacity is **denied**.

### ii.  Tortious interference with a contractual relationship

Mayor Christopher argues Count V should be dismissed because as an agent of the City of Williamstown, he cannot be liable for interfering with a contract to which the City was a party.  (Doc. # 53 at 11).  "Under Kentucky law, [a]gents of a party to a contract who act within the scope of their employment cannot interfere with that party's contract.'" *Hackney v. Lincoln Nat'l Fire Ins. Co.*, 657 F. App'x 563, 576 (6th Cir. 2016) (quoting *Harstad v. Whiteman*, 338 S.W.3d 804, 814 (Ky. Ct. App. 2011)).  However, the claim

may be valid if the individual was acting in his own self-interest. *Rawlings v. Breit*, No. 2003-CA-002785-MR, 2005 WL 1415356, at *3 (Ky. Ct. App. June 17, 2005) (citations omitted).

MGPI argues it has pled sufficient facts to show that Mayor Christopher was acting in his own self-interest because he had made certain comments before he became Mayor that showed his opposition to the project. Specifically, Plaintiff points to statements made by Mayor Christopher at a Grant County Planning Commission Meeting prior to being elected Mayor. As reflected in the minutes of the meeting, Christopher was concerned about the project and its effect on his family's Airbnb in Williamstown, indicating he would prefer a different use for the property. (Doc. # 57 at 8) (citing Doc. #1-2). Taking these facts as true and drawing all reasonable inferences in the nonmoving party's favor, the Court concludes MGPI has pled sufficient facts to support a finding that Mayor Christopher was acting in his self-interest when he interfered with this contractual relationship. Survival of this claim means MGPI's claim of punitive damages against Mayor Christopher in his individual capacity remains viable as well. Therefore, the Motion to Dismiss the claim of tortious interference with a contractual relationship and Motion to Dismiss the punitive damages claim against Mayor Christopher in his individual capacity are **denied**.

### 3. *Claims against the City of Williamstown*

In the Supplemental Joint Motion to Dismiss, the City of Williamstown (the "City") additionally argues the claims of breach of good faith and fair dealing (Count IV),

15

regulatory taking (second Count VI[2]), and injunctive relief (Count VIII) against it must be dismissed.  (Doc. # 45 at 4-6).

### i.    Breach of good faith and fair dealing

Every contract contains an implied covenant of good faith and fair dealing.  *Ranier v. Mount Sterling Nat. Bank*, 812 S.W.2d 154, 156 (Ky. 1991).  Defendant argues that Plaintiff's claim should be dismissed because this is not a valid separate tort claim.  (Doc. # 54 at 4).  Although "[b]reach of this implied covenant is not an independent cause of action . . . alleging a general breach of contract claim does not preclude Plaintiffs from alleging a separate claim arising from the alleged breach of the covenant of good faith and fair dealing."  *Morris v. Tyson Chicken, Inc.*, 497 F. Supp. 3d 282, 289 (W.D. Ky. 2020) (citing *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 817 (E.D. Ky. 2013)).  Rather, the claim "may serve as the basis for a breach of contract claim."  *KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 460-61 (6th Cir. 2019) (citing *State Auto Prop. and Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 196 (6th Cir. 2015)).

Here, allegations of a breach of good faith and fair dealing have been brought pursuant to the Water Service Support Agreement, a contract.   (Doc. # 44 ¶ 80).  "Because it is clear that plaintiffs allege this claim under contract law," the argument that this is not a valid separate tort claim must be disregarded*.  N. Atl. Operating Co., Inc. v. ZZSS, LLC*, No. 3:17-CV-00214-CRS, 2018 WL 1411266, at *3 n.1 (W.D. Ky. Mar. 21, 2018).  Therefore, the Court rejects the City's argument as to this claim.  The City's Motion to Dismiss Plaintiff's claim of implied covenant of good faith and fair dealing is **denied**.

---

2       Due to an error in the Amended Complaint, there are two counts labeled "Count VI."  The Regulatory Taking claim is the second Count VI.

### ii.    Regulatory taking

Defendant argues that Count VI should be dismissed because MGPI cannot assert a claim of regulatory taking because there is no allegation of ownership of the Project Site, and "inherent" in a taking claim is that the Plaintiff owns the property.  (Doc. # 54 at 5).   This argument ignores the investment MPGI made, the Water Services Support Agreement, and the alleged purchase agreement it entered to purchase property for $2,800,000 in reliance on the City's passing of Ordinance 2023-14.  (Doc. # 44 ¶ 30). Plaintiff relies on the Supreme Court decision *Palazzolo v. Rhode Island* in arguing that a regulatory taking claim "is not barred by the mere fact that title was acquired after the effective date of the state-imposed restriction."  533 U.S. 606, 630 (2001).

Defendant argues *Palazzolo* does not apply here because in *Palazzolo*, the petitioner "acquired and obtained full title of the property at issue."  (Doc. # 59).  However, the Supreme Court also stated in *Palazzolo* that "[i]t would be illogical, and unfair, to bar a regulatory takings claim because of the post-enactment transfer of ownership *where the steps necessary to make the claim ripe were not taken, or could not have been taken, by a previous owner*."  *Palazzolo*, 533 U.S. at 628 (emphasis added).  Here, considering the facts in the light most favorable to MGPI as is required at this stage in the litigation, the purchase of the property was imminent and would have been acquired but for the alleged actions of the City.  Therefore, the regulatory taking claim has been sufficiently pled[3] and the Motion to Dismiss this claim is **denied**.

---

[3]     Although the Court recognizes it is not the Defendant's burden to prove this claim, the Court also notes that the Defendant's arguments on this matter are not fully developed.  And "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*,

### iii.    Injunctive relief

Finally, Defendants argue that Count VIII, Plaintiff's claim of injunctive relief, must be dismissed because this is a remedy rather than a cause of action.  (Doc. # 54 at 6). Plaintiff responds that its standalone claim for injunctive relief was intended to put Defendants on notice that it would seek such relief.  (Doc. # 57 at 13).  Defendants are sufficiently on notice of this requested relief given that it is also included in Plaintiff's Prayor for Relief.  (*See* Doc. # 44 at 23).  Because injunctive relief is not a standalone cause of action the Motion to Dismiss Count VIII is **granted**.  However, Plaintiff may still pursue this remedy.  *See Church Mut. Ins. Co. v. Smith*, No. 3:14-CV-749-JHM, 2015 WL 3480656, at *6 (W.D. Ky. June 2, 2015).

## III.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    Defendants' Joint Motion to Dismiss (Doc. # 45) is **GRANTED** as to the claims against Williamstown City Council members and Mayor Christopher in their official capacities.  The claim of punitive damages against the City of Williamstown is **DENIED AS MOOT**;

(2)    Defendants' Supplemental Joint Motion to Dismiss (Doc. # 54) is **DENIED** as to the claims of breach of good faith and fair dealing (Count IV) and regulatory taking (second Count VI) and **GRANTED** as to the claim of injunctive relief (Count VIII);

---

125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir.1995)).  The Court will not conduct a more thorough analysis of what is required for a regulatory taking where the parties have not briefed such.

(3)     Defendant Mayor Christopher's Motion to Dismiss the remaining claims against him in his individual capacity (Counts I, VII, and VIII) (Doc. # 46) is **DENIED**;

(4)     Defendant's Mayor Christopher's Supplemental Motion to Dismiss the claim of tortious interference with a contractual relationship (Count V) (Doc. # 53) is **DENIED**; and

(5)     Defendants shall file their Answers to the remaining claims within twenty (20) days from the date of entry of this Order.

This 31st day of July, 2024.

Signed By:
_David L. Bunning_     *DB*
**United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Cov2024\24-23 MOO re MTD.docx

19