**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL CASE NO. 24-23-DLB-CJS**

**MGPI of INDIANA, LLC**                                                  **PLAINTIFF**

**v.**                       **MEMORANDUM OPINION AND ORDER**

**CITY OF WILLIAMSTOWN, KY, et al.**                          **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

This matter is before the Court on Defendant, the City of Williamstown (the "City")'s Motion for Partial Judgment on the Pleadings. (Doc. # 71). Plaintiff, MGPI of Indiana, LLC ("MGPI") having filed its Response (Doc. # 73), and Defendant having filed its Reply (Doc. # 75), this Motion is now ripe for the Court's consideration. For the following reasons the City's Motion is **granted**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

MGPI is a producer of distilled spirits, branded spirits products, and specialty food ingredients. (Doc. # 44 ¶ 13). MGPI has five existing distilled spirits warehouse facilities in Williamstown, Kentucky. (*Id.*). This case concerns MGPI's negotiations with the City of Williamstown to build up to six additional warehouse facilities to be used for storing and aging bourbon. (*Id.* ¶ 14). Given the voluminous facts in this case, the Court will recount only those necessary to the adjudication of the instant Motion.

On August 1, 2023, MGPI and the City began negotiations regarding MGPI's expansion in the City (the "Project"). (*Id.*). Prior to these negotiations, the approximately

1

120 acres that were to be allocated for the Project (the "Project Site") had been rezoned to Industrial-One ("I-1") pursuant to Ordinance 2021-14 passed on November 19, 2021. (*Id.* ¶ 15).  On September 29, 2019, prior to being elected Mayor of Williamstown, Mark Christopher objected to this rezoning.  (*Id.* ¶ 16).  The City proceeded with the rezoning anyway.  (*Id.*).

On September 19, 2023, MGPI met with now Mayor Christopher and the City Council to discuss the Project and its financing.  (*Id.* ¶ 17).  A portion of the costs of the Project were to be financed by proceeds from industrial revenue bonds (the "Bonds") issued by the City.  (*Id.*).  Three days later, on September 22, 2023, Mayor Christopher sent MGPI a letter stating that the City Council had accepted and agreed to the construction of a water tower, a waterline extension, and issuance of the Bonds.  (Doc. # 44-3).  Mayor Christopher represented to MGPI that the City of Williamstown had "made a commitment to partner with MPG Ingredients, Inc. [sic], pertaining to [its] proposal, [its] donation, and further expansion of Conrad Lane."  (Doc. # 44 ¶ 17.).

On October 2, 2023, the City Council conducted its first reading for Ordinance 2023-14, which would authorize issuance of the Bonds, along with approval and authorization of the execution and delivery of:

> (A) a Lease Agreement between the City of Williamstown, as Lessor, and MGPI, as Lessee, for the Project, with the rental payments to be made by MGPI thereunder pledged to repay the Bonds, (B) a Bond Purchase Agreement providing for the issuance, sale, and delivery of the Bonds to finance the costs of the Project and providing for their negotiated sale, (C) a Water Services Support Agreement relating to municipal water service to the Project, and (D) other related Documents; and other related actions.

(*Id.* at ¶ 19).

2

On October 17, 2023, the City Council conducted a second reading and voted to approve Ordinance 2023-14, along with the lease agreement, bond purchase agreement, and water services support agreement. (*Id.* ¶¶ 21-22). On the same date, Mayor Christopher signed the Ordinance and executed the Water Services Support Agreement. (*Id.* ¶ 24). The Water Services Support Agreement stated the City had "adopted a Bond-authorizing Ordinance" and included promises by the City to issue the bonds "for the benefit of the Company [MGPI], . . . to finance the acquisition, construction and installation of the Project, to acquire title to the Project and to lease said Project back to the Company." (*Id.* ¶ 26) (quoting Doc. # 44-5).

MGPI alleges that "[a]cting in reliance on the Defendants' promises that became legally binding through the City Council's passing of Ordinance 2023-14 and through the Water Services Support Agreement, MGPI entered into a purchase agreement for the Property to purchase the Property for $2,800,000." (Doc. # 44 ¶ 30). MGPI alleges closing has been delayed due to the alleged actions of the Defendants. (*Id.*). MGPI also alleges it incurred other substantial costs associated with the Project in reliance on Defendants' promises that "became legally binding through the City Council's passing of Ordinance 2023-14 and through the Water Services Support Agreement." (*Id.* ¶ 31). On October 23, 2023, in accordance with these agreements, the Grant County Planning Commission ("Planning Commission") approved a grading plan for two of MGPI's buildings on the Project Site. (*Id.* ¶ 32).

Then, allegedly for the first time, "Mayor Christopher read a prepared letter into the record, at the November 6, 2023 Williamstown City Council Meeting, indicating that he wanted the City Council to reconsider its decision to approve and support the MGPI

Project." (*Id.* ¶ 33). The next day, Mayor Christopher sent MGPI a letter stating he would be "issuing a stop work order on the proposed project area" effective November 10, 2023. (*Id.* ¶ 34). On November 9, 2023, Mayor Christopher executed the Stop Work Order. (*Id.* ¶ 35). On November 30, 2023, MGPI executed the Lease Agreement, Bond Purchase Agreement, and Request for Advance of Bond Proceeds and Construction Fund Requisition called for in Ordinance 2023-14. (*Id.* ¶¶ 36-37). MGPI alleges that "to date, Mayor Christopher has refused to execute [these documents] as 'authorized, empowered, and directed' by Ordinance 2023-14." (*Id.*).

On December 4, 2023, the City Council held a meeting in which Mayor Christopher opened the floor to public comment regarding the Project. (*Id.* ¶ 38). At that meeting, City Attorney Jeff Shipp gave the first reading of Ordinance 2023-15, which purported to repeal Ordinance 2023-14. (*Id.*). On December 19, 2023, the City Council held a Special Meeting, at which MGPI could directly answer questions regarding the Project. (*Id.* ¶ 39). Mayor Christopher then directed City Attorney Shipp to provide a second reading of Ordinance 2023-15. (*Id.*). Shipp allegedly refused and "stated on the record that he considered Ordinance 2023-15 to violate state and federal law." (*Id.*). Then, although "Shipp informed Mayor Christopher that the procedural rules of the City Council allow either the Clerk or the Mayor to conduct the second reading" Mayor Christopher allegedly told Shipp "to read the Ordinance or leave the meeting." (*Id.*). Shipp left the meeting and Mayor Christopher allegedly adjourned the meeting due to the lack of present legal counsel. (*Id.*). Thereafter, Mayor Christopher wrote a letter to the Planning Commission and the Grant County Building Inspector requesting the relevant permitting be postponed until it obtained new legal counsel. (*Id.* ¶ 42).

4

Once new legal counsel was hired, the City Council conducted a second reading of Ordinance 2023-15. The Ordinance was adopted, with Mayor Christopher casting the tie breaking vote. (*Id.* ¶ 47). On January 19, 2024, Mayor Christopher sent a letter to the Planning Commission requesting that it table the review of all permits related to the Project. (*Id.* ¶ 48). On January 22, 2024, the Planning Commission voted to table the review of permits or plans of the Project in accordance with the letter. (*Id.* ¶ 49).

On February 12, 2024, MGPI filed this action. (Doc. # 1). Later, on April 15, 2024, Plaintiff moved to amend its Complaint. (Doc. #39). Magistrate Judge Candace J. Smith granted the motion as a matter of right, and the First Amended Complaint was filed on May 2, 2024. (Docs. # 43 and 44). In Count I of the First Amended Complaint MGPI alleges, among other things, violations of the United States Constitution's Fifth and Fourteenth Amendments, as well as the Contracts Clause. (Doc. # 44). The City now moves for Judgment on the Pleadings with respect to MGPI's Section 1983 claim against it. (Doc. #71).

### III. ANALYSIS

#### A. Standard of Review

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011); *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). As the Supreme Court explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quotations omitted).  The claimant must put forward enough facts that the court could reasonably infer "that the defendant is liable for the misconduct alleged." *Id.*

When deciding a motion for judgment on the pleadings, the court must accept "all well-pleaded material allegations of the pleadings" from the non-moving party as true. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).  However, as with a 12(b)(6) motion, this assumption of truth does not extend to "legal conclusions or unwarranted factual inferences." *JPMorgan*, 510 F.3d at 581-82 (citation and internal quotation marks omitted).  The court should grant a Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* at 582.  Courts may consider exhibits attached to the complaint without converting a 12(c) motion into a motion for summary judgment, as well as "public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion . . . so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

**B.     MGPI's Section 1983 Claim**

In Count I of its First Amended Complaint, MGPI asserts claims against the City, the City Counsel, and Mayor Christopher in his official and individual capacities, for constitutional violations pursuant to 42 U.S.C. § 1983.  (Doc. # 44).  Section 1983 allows

6

a plaintiff to sue any person, who under color of law, deprives the plaintiff of any "rights, privileges, or immunities secured by the Constitution and [federal] laws . . . ." 42 U.S.C. § 1983; *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989). "The statute is thus limited to deprivations of *federal* statutory and constitutional rights." *Huron Valley Hosp., Inc.*, 887 F.2d at 714 (emphasis in original) (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)). MGPI argues that the City deprived it of rights secured by the United States Constitution, the Takings Clause of the Fifth Amendment, the Fourteenth Amendment's Due Process Clause, and the Contracts Clause. (Doc. # 44 ¶ 54). The City now moves for Partial Judgment on the Pleadings with respect to the Section 1983 claims asserted against it.[1] (Doc. # 71).

### 1. The Contracts Clause

MGPI claims that the City's conduct violated the Contracts Clause. (Doc. # 44 ¶ 54). The City argues that MGPI's Contracts Clause claim fails because Sixth Circuit case law is clear that Contracts Clause violations do not give rise to a Section 1983 claim. (Doc. # 71 at 6–7 (citing *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017))); *see also Laborers' International Union of North America, Local 860 v. Neff*, 29 F.4th 325, 334 (6th Cir. 2022) (declining to reconsider *Kaminski*'s holding that "an alleged Contracts Clause violation cannot give rise to a cause of action under § 1983[]") quoting *Kaminski*, 865 F.3d at 347))). MGPI did not respond to this argument in its Response. (*See* Doc. # 73). Therefore, in light of binding Sixth Circuit precedent and MGPI's failure to respond, the Court will **grant** the City's Partial Motion for Judgment on the Pleadings with respect to MGPI's Contracts Clause claim under Section 1983.

---

[1]  All claims against the City Council members in their official capacities have already been dismissed (Doc. # 60), and Mayor Christopher has not joined the City's Motion. (Doc. # 71).

### 2.     *Procedural Due Process*

The City argues that MGPI's procedural due process claim should fail because "a claim for a due-process violation does not lie where the thrust of the plaintiff's argument is simply breach of contract." (Doc. # 71 at 8 (quoting *Kaminski*, 865 F.3d at 348)). MGPI responds that this claim is more than a mere breach of contract action, and is instead an action based on deprivations of constitutionally protected interests which "arose independently from any contractual promise with the City and that cannot be adequately remedied from a simple state breach of contract action." (Doc. # 73 at 13).

The Due Process Clause of the 14th Amendment forbids the deprivation of a constitutionally protected interest without due process of law. U.S. Const. amend. XIV § 1; *Kaminski*, 865 F.3d at 348. If there is an available breach of contract remedy, then process is afforded to the aggrieved party, and a procedural due process claim will be unavailable. *Kaminski*, 865 F.3d at 348. In other words, "[Sixth Circuit] case law makes clear that a claim for a due process violation does not lie where the thrust of the plaintiffs' argument is simply breach of contract." *Id.*; *Ramsey v. Board of Educ. of Whitley Cnty., Kentucky.*, 844 F.2d 1268, 1272–73 (6th Cir. 1988) (noting that a Section 1983 action is unavailable where "a state tort action provides an adequate remedy for a child spanked at school" and reasoning that the same logic "bar[s] a section 1983 action when the deprivation is a simple breach of contract and there is adequate state breach of contract action available as a remedy." (citing *Ingraham v. Wright*, 430 U.S. 651 (1977))).

In its Response, MGPI describes several deprivations which it argues do not rely "solely on the breach of a contract." (Doc. # 73 at 12). First, MGPI claims that the City deprived MGPI of benefits it was entitled to by law under Ordinance 2013-14 when the

8

City passed the repeal ordinance, Ordinance 2013-15. (*Id.*). Second, MGPI claims that Mayor Christopher's stop work order "deprived MGPI of the absolute and unconditional rights afforded by the grading plan that was previously approved by the Grant County Planning Commission . . . ." (*Id.*). Finally, MGPI claims the City prohibited the Grant County Planning Commission from "reviewing and approving pending plans and permits—all without the ability to be heard by the Planning Commission on what is a ministerial approval." (*Id.* at 13).

### i.      Repeal Ordinance 2023-15

MGPI alleges that Ordinance 2013-14 "confirmed and ratified" the City's agreement with MGPI to authorize and issue bonds to fund the project, and it also "authorized, empowered, and directed" execution of a lease agreement where the City was the lessor. (*Id.* at 12 (quoting Doc. # 44-4)). MGPI continues, arguing that Ordinance 2013-14 "unquestionably supported a claim of entitlement by MGPI to 'certain benefits' that could not be deprived absent due process." (Doc. # 73 at 12). MGPI then cites two cases which establish that individuals can have protected property interests created and defined under Kentucky law. (*Id.* at 73 at 12 (citing *Ramsey*, 844 F.2d at 1271–72 and *Am. Express Travel Related Servs. V. Kentucky*, 597 F. Supp. 2d 717, 724 (E.D. Ky. 2009))). Because MGPI had a protected property interest created by law—Ordinance 2023-14—MGPI argues it was a violation of the Due Process Clause for the City to adopt the repeal ordinance.

MGPI's argument is unpersuasive. Whether there is a protected interest in this case is beside the point because the "thrust of [MGPI's] argument is simply breach of contract . . . ." *Kaminski*, 865 F.3d at 348. The Sixth Circuit "has held that a state breach

9

of contract action may . . . provide an adequate remedy for some deprivations of a contractually created property interest." *Id.* at 348 (internal quotation marks omitted) (ellipse in original) (quoting *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x. 826, 831 (6th Cir. 2009)). Where there is an adequate remedy through a breach of contract remedy, a due process claim will not survive even if there is a protected property interest under state law. *Karminski*, 865 at 347–48 (retirees suing under Section 1983 to enjoin Emergency Manager's decision to modify their healthcare plans could not assert a due process claim because their "property right derive[d] from contract"); *Ramsey*, 844 F.2d at 1270–71, 1273 (county employee had a protected property interest in accumulated sick leave days which were reduced due to a new school board policy, however he did not have a viable procedural due process claim because a breach of contract action would provide the process which was due); *Taylor Acquisitions, LLC*, 313 F. App'x at 831–32 (assuming arguendo that the plaintiff could establish a protected property interest, plaintiff's procedural due process claim failed because it could not establish "that it did not receive adequate procedural protections[,]" because there was an available breach of contract remedy).

The facts, as stated in the First Amended Complaint, tell a story of ongoing negotiations which resulted in an agreement between two parties—MGPI and the City—which was authorized by Ordinance 2023-14 and effectuated in part by the Water Services Support Agreement. (*See* Doc. # 44). As MGPI itself has stated, Ordinance 2023-14 "'confirm[d] [sic] and ratified' the City's agreement to authorize and issue bonds for MGPI to finance the Project and that it 'authorized, empowered, and directed' execution of the Lease Agreement and Bond Purchase Agreement." (Doc. # 73 at 12

10

quoting (Doc. # 44-4)).  Here, the rights MGPI asserts are products of a contract between MGPI and the City.  (*See* Doc. # 44-4 ("the Issuer . . . [c]onfirms and ratifies the prior discussions, and agreement whereby the [City] agreed to authorize and issue bonds for [MGPI] in order to finance the Project.")).  The fact that MGPI's rights were codified in Ordinance 2023-14 is immaterial because Ordinance 2023-14 merely "confirm[ed] and ratifie[d]" prior agreements between the City and MGPI.  (Doc. # 44-4).  The damages alleged in the First Amended Complaint bear all the hallmarks of damages recoverable under Kentucky contract law.  (*See* Doc. # 44).  MGPI flatly states that a breach of contract remedy would not be sufficient without any developed argumentation as to why that is.  (*See e.g.* Doc. # 73 at 13).  But, as the Court warned in its prior order, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *MGPI of Indiana, LLC v. City of Williamstown, Ky.* No. 24-cv-23, 2024 WL 3625658 at *8 n.3 (E.D. Ky. July 31, 2024) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).  Accordingly, MGPI cannot assert a due process claim against the City based on the City's adoption of Ordinance 2023-15.

### ii. Pending and Approved Permits and Plans

MGPI also argues that it had a protected interest in grading plans, approved by the County Planning Commission, and that the City interfered with MGPI's rights by "affirmatively prohibiting MGPI from acting on [the] grading plans . . . ." (Doc. # 73 at 13).  Further, MGPI argues that it was a violation of its right to procedural due process when the City "prohibited the Planning Commission from reviewing and approving pending

11

plans and permits—all without the ability to be heard by the Planning Commission on what is a ministerial approval." (*Id.*). MGPI points to *Triomphe Investors v. City of Northwood*, where the Sixth Circuit held that a plaintiff may have a protected interest in a special use permit, provided that the plaintiff could prove that the city council did not have the discretion to deny the permit. 49 F.3d 198, 202–03 (6th Cir. 1995). MGPI also brings the Court's attention to *Chandler v. Village of Chagrin Falls*, where the Sixth Circuit in an unpublished opinion held that a woman seeking to build a standalone garage had a protected property interest in a building permit which could not be taken away without due process. 296 F. App'x 463, 469 (6th Cir. 2008). Because *Chandler* had a protected property interest, the Sixth Circuit evaluated the merits of her due process claim. *Id.* at 472–73.

Neither of these cases saves MGPI's procedural due process claim because it is not enough to merely demonstrate that there is a protected property interest. "Because a due-process claim is predicated on the deprivation of a constitutionally protected interest *without due process of law*, the availability of a state breach-of-contract remedy defeats the due-process claim." *Kaminski*, 865 F.3d at 348 (emphasis in original). Unlike *Triomphe* and *Chandler*, here the thrust of this dispute is whether MGPI entered into an agreement with the City to ensure that the Project would be financed and developed. Even if it were true that MGPI had a legitimate claim of entitlement to the right to advance the Project based on the approved grading plans, and that MGPI had a justifiable expectation that its additional plans and permits would be approved, such an expectation is only reasonable in light of the contractual framework between MGPI and the City. (*See* Doc. # 44 ¶ 54(b) ("the City of Williamstown entered into a contractual relationship with

12

MGPI through the Water Service Support Agreement to ensure the Project is developed . . .")).[2]  Again, because "the thrust of the [P]laintiff['s] argument is simply breach of contract[,]" and MGPI has an available remedy in the form of a state law breach of contract action, they cannot assert a procedural due process claim here.[3]

Because there is an available remedy through a state law breach of contract action, MGPI's procedural due process claim fails.  Accordingly, the City's Motion for Judgment on the Pleadings with respect to MGPI's procedural due process claim is **granted**.

### 3. *Substantive Due Process*

"To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally protected property or liberty interest." *Silver v. Franklin Tp. Bd. of Zoning Appeal's*, 966 F.2d 1031, 1036 (6th Cir. 1992).  As has already been explained, to the extent that Ordinance 2023-15 conferred any rights upon MGPI, those rights were derived from contract.  *Supra* § III(B)(2)(i).  The same is true for the pending and approved permits and plans.  Any expectation that MGPI would be able to develop the Project based on the pending and approved permits would only have been reasonable in light of the underlying contractual framework.  *Supra* § III(B)(2)(ii).  "[These] state-

---

[2]  Although not specifically averred to in the briefing, it is worthy of note that the First Amended Complaint asserts that the Water Support Services Agreement contained a provision requiring the City to agree that it would "use its best efforts to assist [MGPI] with the acquisition, construction, equipping, improving and installation of the Project, *including the timely issuance of all licenses and permits*."  (Doc. # 44 ¶ 29) (emphasis added)*; see also* Doc. # 44-5).  This provision is further evidence that any reasonable expectation of permit approval would only be reasonable with in light of the contractual relationship between MGPI and the City.

[3]  The parties should note that the Court does not hold that there was a contract between MGPI and the City which was breached.  Rather, the Court finds that if MGPI is entitled to relief, it must come in the form of a breach of contract action.

created contractual right[s are] not 'a proper subject of federal protection under the doctrine of substantive due process.'" *Taylor Acquisitions, LLC*, 313 F. App'x at 834 (quoting *Bowers v. City of Flint*, 325 F.3d 758, 764 (6th Cir. 2003); citing *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990)). Therefore, MGPI does not have a Section 1983 claim on the basis that the City deprived it of its substantive due process rights.

Because MGPI has failed to allege a protected property interest, the City's Motion for Judgment on the Pleadings with respect to MGPI's substantive due process claim is **granted**.

### 4. The Takings Clause

The City argues that judgment should be entered in its favor on MGPI's Takings Clause claim because there is an available breach of contract action. (Doc. # 71 at 12–14). In its Response, MGPI first argues that the Court has already held, in its July 31, 2024 Memorandum Opinion and Order, that "the [First] Amended Complaint states a valid § 1983 Claim for a regulatory taking in violation of the Fifth Amendment." (Doc. # 73 at 14 (citing Doc. # 60)). This argument is misleading. In the City's Motion for Partial Judgment on the Pleadings, the City asks for Judgment in its favor with respect to the Takings Claim asserted in Count I of the First Amended Complaint under Section 1983. (Doc. # 71 at 12–14); (Doc. # 44 § 54). The July 31, 2024 Order did not discuss the Takings Clause claim asserted in Count I. (*See* Doc. # 60). Instead, the Order held that the regulatory taking claim, asserted in Count VI, had been adequately pled. (*Id.* at 17). The Court never held that Defendant stated a valid Section 1983 claim for a taking in Count I. (*See id.*).

14

MGPI next argues that the City's Motion should fail because there is "no adequate remedy in a breach of contract suit for the City's unconstitutional taking . . . ." (Doc. # 73 at 14). MGPI goes on to say that

> The First Amended Complaint clearly alleges that MGPI, '[a]cting in reliance on the Defendants' promises that became legally binding with the City Council's passing of [the Bond Ordinance] and through the Water Services Support Agreement, [] entered into a purchase agreement for the Property to purchase the Property for $2,800,000' and expended considerable sums in connection with the impending purchase and preparation of the Project Site for the Project.

(Doc. # 73 at 14) (emphasis in original) (quoting Doc. # 44 ¶ 30). MGPI continues: "The Water Services Support Agreement supplies support for this claim but is not the source of the constitutionally protected property right asserted in this claim." (Doc. # 73 at 15). Because "the purchase of the [Project Site] was imminent and would have been acquired but for the alleged actions of the City[,]" MGPI argues that it has adequately pled a Takings claim under Section 1983. (*Id.*) (quoting Doc. # 60 at 17).

The Court does not agree with MGPI's analysis. As the City has pointed out (Doc. # 71 at 13), "where a party claims that a governmental entity breached rights guaranteed by a contract, 'the proper recourse would be a breach-of-contract claim, not a takings claim." *Neff*, 29 F.4th at 335 (quoting *B&B Trucking, Inc. v. U.S. Postal Serv.*, 406 F.3d 766, 769 (6th Cir. 2005) (*en banc*)); *see also Kaminski*, 865 F.3d at 348–49 ("[A] mere allegation of property deprivation does not by itself state a constitutional claim . . . in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate." (quoting *Hudson v. Palmer*, 468 U.S. 517, 539 (1984))).

15

MGPI does not challenge the accuracy of this statement of law. (*See* Doc. # 73). Rather, MGPI argues that its constitutionally protected rights do not derive from a contract and that a breach of contract claim would be inadequate. (*Id.* at 15). As this Court has already explained, MGPI's rights to develop the project, to the extent that MGPI had any, were derived from a contract. *Supra* § III(B)(1)–(2). As MGPI itself explained, it acted in reliance "on [the City's] promises that became legally binding" when the City Council passed the Bond Ordinance and through the Water Services Support Agreement entered into a purchase agreement for the Project Site. (Doc. # 73 at 14). Moreover, MGPI does not attempt to explain why a breach of contract action would not be an adequate remedy to this alleged wrong. Indeed, in its Response MGPI alleges reliance damages, which are clearly recoverable under a breach of contract action.

Because there is an available breach of contract action, and because MGPI has not demonstrated why a breach of contract action would be inadequate, the City's Motion for Judgment on the Pleadings is **granted** with respect to the Takings Claim asserted in Count I of the First Amended Complaint.

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** that the City's Motion for Partial Judgment on the Pleadings (Doc. # 71) is **GRANTED**. MGPI's § 1983 claims in Count I of the First Amended Complaint are dismissed as a matter of law.

This 30th day of June, 2025.



Signed By:
David L. Bunning
Chief United States District Judge